1   KEKER, VAN NEST & PETERS LLP
    BENEDICT Y. HUR - # 224018
2   bhur@keker.com
    ERIN E. MEYER - # 274244
3   emeyer@keker.com
    GRACE Y. YANG - # 286635
4   gyang@keker.com
    633 Battery Street
5   San Francisco, CA 94111-1809
    Telephone:    415 391 5400
6   Facsimile:    415 397 7188

7   Attorneys for Defendant
    GOOGLE LLC

8                        UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12  TECH EYES, INC., a California          Case No.
    corporation,
                                           **NOTICE OF REMOVAL**
13                Plaintiff,
                                           [Removed from Santa Clara Superior Court,
14         v.                              Case No. 17-CV-307381]

15  GOOGLE LLC,

16                Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

1286097

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendant Google LLC ("Google") hereby removes *Tech Eyes, Inc. v. Google LLC*, Case No. 17-CV-307381 from Santa Clara Superior Court to the United States District Court for the Northern District of California on the grounds stated below. Copies of this Notice of Removal are being served on Plaintiff Tech Eyes, Inc., Plaintiff's Chapter 7 bankruptcy trustee Paul Mansdorf, and Plaintiff's counsel, and also filed with the Clerk of Santa Clara Superior Court, as required by Section 1446 of Title 28 of the United States Code.

## I.     INTRODUCTION

1.     On June 13, 2018, Plaintiff Tech Eyes, Inc. ("Plaintiff") filed a fourth amended complaint ("the Complaint") on behalf of a putative class against Google in Santa Clara Superior Court, under the case caption *Tech Eyes, Inc. v. Google LLC*, Case No. 17-CV-307381.  Google was served with the Complaint that same day.  Plaintiff's prior complaints in this case were for individual claims only, and not on behalf of any purported class.

2.     Plaintiff alleges that Google engaged in unlawful occupational discrimination against Plaintiff and other business entities in purported violation of Section 51.5(b) of California's Civil Rights Act.  *See, e.g.*, Compl. ¶¶ 5, 25, 29.  Plaintiff seeks minimum statutory damages of $4,000 per discriminatory occurrence—in an amount of not less than $5,000,000—as well as costs, attorney's fees, and other relief as the court deems just.  *See id.* at 8.

3.     Plaintiff styled the Complaint as a "Class Action" and seeks to represent and have the following certified as a class:

- All business entities who, during March 16, 2015 through the date of class certification, are or were similarly situated to the Class and who are further described as comprising business entities located throughout the United States as well as the rest of the world (Class Members);
- Who were parties to a Google Services Agreement ("GSA") providing that they were entitled to receive Google Business Establishment ("GBE") Advertising Services from GBE;
- Who offered to sell or service on any website any products that (i) were

designed to injure an opponent in sport, self-defense or combat such as knives, crossbows and guns or (ii) which comprised any part or component necessary to the function of a gun (iii) or which were intended for attachment to a gun; and

- Who had their GBE Advertising Services suspended by GBE because they had offered to sell or service on any website any products that (i) were designed to injure an opponent in sport, self-defense or combat such as knives, crossbows or guns or (ii) which comprised any part or component necessary to the function of a gun (iii) or which were intended for attachment to a gun.

## II.   REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT OF 2006

4.      Under Section 1441(a) of Title 28 of the United States Codes, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

5.      Under the Class Action Fairness Act of 2005 ("CAFA"), United States district courts have original jurisdiction over purported class actions in which the number of members in the proposed class is at least 100; at least one plaintiff is diverse in citizenship from any defendant; and the aggregate amount in controversy exceeds $5,000,000.  *See* 28 U.S.C. § 1332(d).

6.      As set forth more fully below, Google may remove this case to this Court because (i) the putative class includes at least 100 putative class members; (2) at least one member of the putative class is a citizen of a State different from at least one defendant; and (3) the matter in controversy as alleged exceeds $5,000,000.

### A.   The putative class includes at least 100 putative class members.

7.      A class action is removable under CAFA if the "number of members of all proposed plaintiff classes" is greater than or equal to 100.  29 U.S.C. § 1332(d)(5)(B).  Plaintiff alleges that "there are not less than 500 Class Members."  Compl. ¶ 27.  The putative class therefore exceeds 100 members.

**B.      There is minimal diversity.**

8.      A class action is removable under CAFA if "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  The putative class consists of members "located throughout the United States as well as the rest of the world." Compl. ¶ 25.  Google is a Delaware limited liability company and a wholly owned subsidiary of XXVI Holdings Inc., which, in turn, is a wholly owned subsidiary of Alphabet Inc., with its principal place of business in Mountain View, California.  Thus, CAFA's minimum diversity requirement is satisfied because Defendant and at least one member of Plaintiff's proposed nationwide and worldwide class are citizens of different states.

**C.      The amount in controversy exceeds $5,000,000.**

9.      A class action is removable under CAFA if the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs[.]"  28 U.S.C. § 1332(d)(2).  A notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); *see also Ibarra v. Manheim Investments, Inc*., 775 F.3d 1193, 1197 (9th Cir. 2015) (noting that "Congress intended CAFA to be interpreted expansively" and that a notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold and need not contain evidentiary submissions, even if a plaintiff affirmatively contends in the complaint that damages do not exceed $5,000,000).

10.      The amount in controversy under CAFA takes into account more than damages. Where the statutes at issue authorize them—as does the California Civil Code here under Plaintiff's allegations—attorneys' fees are also included in the amount in controversy for CAFA purposes.  *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).

11.      Plaintiff alleges minimum statutory damages in an amount of not less than $5,000,000.  *See* Compl. at 9.  Moreover, Plaintiff claims costs, including attorney's fees.  *Id.* The amount in controversy therefore exceeds the $5,000,000 threshold.

**III.      ALL PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED**

12.      Pursuant to Section 1446 of Title 28 of the United States Code, copies of this

3

1286097

Notice of Removal, along with a Notice to Adverse Party of Removal to Federal Court, are being served on Plaintiff, Plaintiff's Chapter 7 bankruptcy trustee Paul Mansdorf, and Plaintiff's counsel, and are also being filed with the Clerk of Santa Clara Superior Court.  A true and correct copy of the Complaint sent to Google's counsel in the state-court action is attached hereto as **Exhibit A**.

13.     Section 1446(b) of  Title 28 of the United States Code identifies two thirty-day periods for removing a case.  *See Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010).  The first thirty-day removal period is triggered if the case stated by the initial pleading is removable on its face. *Id.*  The second thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, and the defendant receives "a copy of an amended pleading, motion, order or other paper" from which removability may first be ascertained.  *Carvalho*, 629 F.3d at 885 (quoting Section 1446(b)).  Here, the Complaint is the first paper from which removability may first be ascertained, and Google has filed the Notice of Removal within thirty days of the date by which Google was served with the Complaint.  Removal is therefore timely in accordance with Section 1446(b).

14.     Venue is proper in this Court pursuant to Sections 1441(a) and 1446(a) of Title 28 of the United States Code because the United States District Court for the Northern District of California is the federal district embracing Santa Clara Superior Court, where the state court action was originally filed.

## IV.    CONCLUSION

By this Notice of Removal, Google does not waive any objections it may have as to service, jurisdiction or venue, or any defenses or objections it may have to this action.  Google intends no admission of fact, law, or liability by this Notice, and expressly reserves all defenses and motions.

Dated:  July 12, 2018                                KEKER, VAN NEST & PETERS LLP


                                             By:    /s/ Benedict Y. Hur
                                                    BENEDICT Y. HUR
                                                    ERIN E. MEYER
                                                    GRACE Y. YANG

                                                    Attorneys for Defendant
                                                    GOOGLE LLC

1286097

Exhibit A

1  WILLIAM McGRANE [057761]
2  MATTHEW SEPUYA [287947]
   McGRANE PC
3  Four Embarcadero Center, 14th Floor
   San Francisco, CA 94111
4  Telephone: (415) 292-4807
   william.mcgrane@mcgranepc.com
5  matthew.sepuya@mcgranepc.com

6  FRANK R. UBHAUS [046085]
7  BERLINER COHEN LLP
   10 Almaden Boulevard, 11th Floor
8  San Jose, CA 95113
   Telephone: (408) 286-5800
9  frank.ubhaus@berliner.com

10 Attorneys for Plaintiff TBE presently acting through Paul Mansdorf, Chapter 7 trustee for the
11 bankruptcy estate of TBE and for all others similarly situated

12                              SUPERIOR COURT

13                  IN AND FOR THE COUNTY OF SANTA CLARA

14                          STATE OF CALIFORNIA

15

16 TECH EYES, INC., a California corporation,      Case No. 17-CV-307381
   for itself and all others similarly situated
17                              Plaintiff,         **CLASS ACTION**

18            v.                                   **FOURTH AMENDED COMPLAINT
                                                   FOR VIOLATION OF THE CIVIL
19 GOOGLE LLC, a Delaware limited liability        RIGHTS ACT OF 2005**
   company,
20                              Defendant.            **[Cal. Civ. Code § 51.5]**

21

22

23

24

25

26

27

28

1    Comes now Plaintiff Tech Eyes, Inc., for itself and all others similarly situated alleges:

2                                    **The Parties**

3    1.      Plaintiff Tech Eyes, Inc. (Tech Eyes Business Establishment or TBE), is a

4    California corporation first formed as a California limited liability company on February 23,

5    2012, which California limited liability company was later converted to a California corporation

6    on January 7, 2015. TBE filed for Chapter 7 bankruptcy on July 31, 2016. TBE's duly appointed

7    and acting Chapter 7 trustee in bankruptcy is Paul Mansdorf.

8    2.      Defendant Google, LLC (Google Business Establishment or GBE) is a Delaware

9    limited liability company with its principal place of business in Santa Clara County, California.

10                              **Jurisdiction and Venue**

11    3.      This case is brought under Civil Code section 51.5(a) (Civil Rights Act section

12    51.5(a)). Venue is proper in this court because, *inter alia*, the parties have contractually agreed to

13    litigate this dispute here.

14          **Limitation of Actions as to the Proposed Representative Plaintiff**

15    4.      This action is timely brought because no actionable occurrence is alleged to have

16    taken place herein more than two years prebankruptcy and the two-years-from-occurrence statute

17    of limitations provided for by Code of Civil Procedure section 335.1 had thus not expired

18    prebankruptcy. So, pursuant to 11 U.S.C. § 108(a)(2), that applicable two-years-from-occurrence

19    statute of limitations was extended by an additional two years through and including the date this

20    action was first filed on March 16, 2017.

21                                **Charging Allegations**

22    5.      TBE is part of a protected class of business establishments engaged in lawful

23    occupations who are entitled to the protections of Civil Rights Act section 51.5(a) as is otherwise

24    set forth in Civil Rights Act section 51.5(b), including, but not limited to, protection against its

25    being subjected to any occupational discrimination by any business establishment (as the term

26    "business establishment" is used in Civil Rights Act section 51.5(a)).

27

28

Fourth Amended Complaint for Violation of the Civil Rights Act of 2005 [Cal. Civ. Code § 51.5]

*Tech Eyes, Inc. v. Google LLC*. Case No. 17-CV-307381

6.     Prebankruptcy TBE was engaged in the lawful occupations of, *inter alia*, selling and servicing knives, crossbows and telescopic sights intended to be mounted on guns (the Relevant Period and the Relevant Occupations, respectively).

7.     All during the Relevant Period, TBE operated a website (the Relevant Website) through which it advertised the fact of its Relevant Occupations.

8.     The Relevant Occupations were facilitated during the Relevant Period by TBE's opening a Google account by way of its entry into a written contract with GBE (hereafter the Google Services Agreement or GSA) which GSA, *inter alia*, provided TBE with the contractual right to, *inter alia*, have GBE place links to the Relevant Website on both GBE's own webpages (Ad Words program) as well as on webpages owned by other GBE customers who had agreed to allow GBE to act as their ad broker (Ad Sense program). The Ad Sense Program and the Ad Words Program are hereafter sometimes collectively referred to as the GBE Advertising Services.

9.     In providing the GBE Advertising Services to the public pursuant to the GSA, GBE acted as a business establishment (as the term "business establishment" is used in Civil Rights Act section 51.5(a)).

10.     The Ad Sense program is described at https://support.google.com/adsense/answer/76231?hl=en, a true copy of which is reproduced as follows (relevant portion highlighted):



AdSense Help

### The difference between AdWords and AdSense

The Google AdWords program enables you to create advertisements which will appear on relevant Google search results pages and our network of partner sites. To learn more about AdWords and begin advertising immediately, please visit www.adwords.google.com.

The Google AdSense program differs in that it delivers Google AdWords ads to individuals' websites. Google then pays web publishers for the ads displayed on their site based on user clicks on ads or on ad impressions, depending on the type of ad.

TRY ADSENSE »    TRY ADWORDS »

2

1    11.    The Ad Sense program makes use of GBE technology to pair ads to third party

2    websites through a fully automated process using several different algorithms for targeting ads to

3    participating websites. GBE makes no active decisions on which ads are placed with any website.

4    In addition to the automated targeting, Ad Sense allows GBE customers to choose which

5    websites they want their ads to appear on. Likewise, users of Ad Sense can choose to define the

6    type of advertising content to be displayed on their websites, or block unwanted ads altogether.

7    12.    GBE's only role in the Ad Sense program being that GBE itself acted solely as a

8    broker being paid a commission for attracting such advertising revenues to the pocketbook of the

9    owners of said third party websites, as described at

10   https://support.google.com/adsense/answer/6242051?hl=en&ref_topic=1319753, a true copy of

11   which is reproduced as follows:

12   AdSense Help

13

14   **How AdSense works**

15   Google AdSense provides a way for website owners to earn money from their online content. AdSense works by
matching text and display ads to your site based on your content and visitors. The ads are created and paid for by

16   advertisers who want to promote their products. Since these advertisers pay different prices for different ads the
amount you earn will vary.

17   Here's how AdSense works in three steps:

18

19   **1. You make your ad**          **2. The highest paying**         **3. You get paid**
     **spaces available**              **ads appear on your site**

20

21

22

23

24

25   You make your website ad spaces      Advertisers bid to show in your ad    We handle the process of billing all
     available by pasting ad code on your  spaces in a real-time auction. The    advertisers and networks for the ads on
26   site, and choose where you want the   highest paying ad will show on        your site, to make sure you receive your
     ads to appear.                       your site.                           payments.

27

28

Fourth Amended Complaint for Violation of the Civil Rights Act of 2005 [Cal. Civ. Code § 51.5]

*Tech Eyes, Inc. v. Google LLC.* Case No. 17-CV-307381

13.     GBE exercises no publishing control over ads that appear on said third party websites.

14.     On August 28, 2014, GBE informed TBE that the "policies available at www.google.com/ads/policies" (GBE Advertising Policies [which GBE Advertising Policies governed the entirety of the GBE Advertising Services, i.e., both the Ad Words program and the Ad Sense program]) were henceforth going to be amended to prohibit, *inter alia*, GBE customers from hyperlinking to any webpage which advertised the sale or service of "Any part or component necessary to the function of a gun or intended for attachment to a gun … products designed to injure an opponent in sport, self-defense or combat."

15.     On October 23, 2014, GBE acknowledged to TBE that GBE had previously suspended its GBE Advertising Services with TBE because TBE was then offering to sell or service, *inter alia*, knives and crossbows on the Relevant Website in violation of the terms of the GSA. See Exhibit 1.

16.     On February 10, 2015, after learning TBE had removed all offers to sell or service knives and crossbows from the Relevant Website, GBE announced that it had rescinded its prior suspension of its GBE Advertising Services with TBE. See Exhibit 2.

17.     That same day however, by way of two additional emails, GBE announced it was again suspending its GBE Advertising Services with TBE, this time on the grounds the Relevant Website offered, *inter alia*, to sell or service telescopic sights in violation of the terms of the GSA. See Group Exhibit 3.

18.     Between February 11, 2015, and November 2, 2015, TBE made various direct objections to GBE's suspension of its GBE Advertising Services with TBE, pointing out, *inter alia*, that Amazon and Walmart offered, *inter alia*, both knives and guns on their respective websites but that neither of them had ever had the GBE Advertising Services suspended by GBE. See Group Exhibit 4.

Fourth Amended Complaint for Violation of the Civil Rights Act of 2005 [Cal. Civ. Code § 51.5]

*Tech Eyes, Inc. v. Google LLC*. Case No. 17-CV-307381

19.     On November 3, 2015, this time acting through outside legal counsel, TBE demanded, *inter alia,* that GBE rescind its February 10, 2015, suspension of its GBE Advertising Services with TBE. See Exhibit 5.

20.     On November 16, 2015, GBE wrote back to TBE's legal counsel, telling that legal counsel that GBE had changed its policies *vis a vis* selling and servicing telescopic sights as of September 29, 2015, and that this change in GBE's policies had been made in response to specific requests from certain previously suspended GBE customers such as TBE, and that GBE would rescind its suspension of its GBE Advertising Services with TBE if that was what TBE desired. See Exhibit 6.

21.     For the avoidance of doubt, TBE admits that neither it nor any members of the Class (as that term is defined, *infra*), seek any actual damages attributable to the misconduct on GBE's behalf that is alleged herein (specifically including any amount of possible actual damages TBE or members of the Class [as that term is defined, *infra*] may have suffered as a result of their being prevented from participating in the Ad Words program [as to which Ad Words program activities GBE has otherwise previously been held by the Court to be immunized from having to pay on account thereof by virtue of the Communications Decency Act [47 U.S.C. § 230(c)]).

22.     Rather, and again for the avoidance of doubt, all both TBE and the Class (as that term is defined, *infra* ) now seek by way of this fourth amended complaint is statutory damages based on the provisions of Civil Code section 52(a) on account of GBE's suspending both TBE's and the Class' contractual rights to participate in the Ad Sense program because TBE and the Class, as that term is defined, *infra*, were engaged in the Relevant Occupations during the Relevant Period.

23.     TBE was an actual Ad Sense program participant (i.e., TBE instructed GBE to place links on third party websites not owned by GBE, which GBE did for TBE) prior to GBE's suspension of its GBE Advertising Services with TBE and, in addition, TBE hereby alleges that —but for the fact TBE was arbitrarily occupationally discriminated against by GBE by virtue of GBE's having caused the GBE Advertising Services to be suspended for much

1  of the Relevant Period due to TBE's continuously engaging in the Relevant Occupations during

2  that time—TBE always had the firm, definite and specific intent to have continued to participate

3  in the Ad Sense program if had been given the chance to do so in a timely manner prebankruptcy

4  by GBE.

5      24.    Under Civil Code section 52(a) (which civil code section specifically incorporates

6  Civil Rights Act section 51.5) GBE is liable to TBE for minimum statutory damages of $4,000

7  per occurrence.

8  **Class Allegations**

9      25.    TBE brings this action on behalf of itself and all other business entities who,

10  during the Class period, as that term is defined, *infra*, are or were similarly situated to it (Class)

11  and who are further described as comprising business entities located throughout the United

12  States as well as the rest of the world (Class Members):

13          •   Who were parties to a GSA providing that they were entitled to receive GBE

14              Advertising Services from GBE; and

15          •   Who offered to sell or service on any website any products that (i) were

16              designed to injure an opponent in sport, self-defense or combat such as knives,

17              crossbows and guns or (ii) which comprised any part or component necessary

18              to the function of a gun (iii) or which were intended for attachment to a gun;

19              and

20          •   Who had their GBE Advertising Services suspended by GBE because they

21              had offered to sell or service on any website any products that (i) were

22              designed to injure an opponent in sport, self-defense or combat such as knives,

23              crossbows or guns or (ii) which comprised any part or component necessary to

24              the function of a gun (iii) or which were intended for attachment to a gun.

25      26.    The overall class period (Class Period) is from March 16, 2015 through the date

26  of class certification.

27      27.    On information and belief, Plaintiffs allege that there are not less than 500 Class

28  Members.

28.     Questions of law and fact common to the Class Members predominate over questions affecting only individual members.

29.     An example of a question affecting all Class Members is to what extent, if any, a putative Class Member must demonstrate it was an actual Ad Sense program participant prior to the suspension of its GBE Advertising Services as to it and can also prove that—but for the fact it was arbitrarily occupationally discriminated against by GBE by virtue of GBE's having caused its GBE Advertising Services to be suspended due to its  continuously engaging in the Relevant Occupations during that time—it had the firm, definite and specific intent to have continued to participate in the Ad Sense program if had been given the chance to do so in a timely manner.

30.     With respect the common issue of law and fact described at ¶ 29 of this fourth amended complaint, TBE contends no such showing should be deemed necessary as any actual attempt to participate or actual participation in the Ad Sense program by any putative Class Member was rendered impossible post-suspension by the wrongful act of GBE and not caused due to any fault of any putative Class Member..

31.     Thus, any resulting uncertainty respecting whether any putative Class Member who  never became an actual Ad Sense program participant prior to the suspension of its GBE Advertising Services by GBE might have wound up participating in the Ad Sense program but for the suspension of its GBE Advertising Services has necessarily been caused by GBE and not that putative Class Member.

32.     Rather, and instead of treating actual participation and/or an intent to partcipate as a litmus test of GBE's liability to putative Class Members, GBE's arbitrary occupational discrimination against all putative Class Members should result in an award of statutory damages to all of them  on the grounds  that, in fact, all of the putative Class Members jural rights to have become Ad Sense participants  have been immediately and adversely affected by GBE's arbitrary occupational discrimination against them, thereby requiring an award of statutory damages in their favor as a matter of law.

33.     Treating this dispute as a class action is a superior method of adjudication.

34.     Joinder of all Class members would be impractical. The amount in controversy, while large in the aggregate, is relatively small for individual Class members, especially when compared to the expense of prosecuting individual claims.

35.     Managing this dispute as a class action should not be difficult.

36.     TBE's claims are typical of the claims of other Class Members. TBE can and will adequately represent Class. It has retained competent and experienced counsel who will vigorously represent the interests of Class.

Wherefore, TBE and Class pray for judgment as follows:

A.     That Class described herein be certified; that TBE be designated lead representative plaintiff and that TBE's counsel be appointed Class counsel;

B.     For minimum statutory damages of $4,000 per discriminatory occurrence as provided in Civil Code section 52(a) in an amount of not less than $5,000,000;

C.     For costs, including statutory attorneys' fees;

D.     For such other relief as the Court deems just.

Dated: June 13, 2018                    McGRANE PC
                                        BERLINER COHEN LLP


                                        By: _____
                                            William McGrane
                                        Attorneys for Plaintiff TBE and all others similarly
                                        situated

Fourth Amended Complaint for Violation of the Civil Rights Act of 2005 [Cal. Civ. Code § 51.5]

*Tech Eyes, Inc. v. Google LLC.* Case No. 17-CV-307381

# EXHIBIT 1

| | |
|---:|:---|
| **DATE** | October 23, 2014 |
| **TIME** | 5:49 PM |
| **SUBJECT** | Re: [6-2057000005185] An Answer to your question from Google AdWords Support |
| **FROM** | adwords-support@google.com |
| **TO** | ab@techeyes.com |

Hello,

Thanks for sending feedback about an ad that violates AdWords policies. Although we won't be able to respond to your feedback personally, we'll make sure it reaches the appropriate team and, if necessary, take the appropriate action.

Have any other AdWords related feedback or questions?

We're constantly working to make our product better, and your opinions and suggestions help us do so. Please visit the feedback page on our Help Center or send us your question by clicking the 'Contact Us' link at the top of the AdWords Help Center.

Sincerely,

The Google AdWords Team

# EXHIBIT 2

| **DATE** | February 10, 2015 |
| --- | --- |
| **TIME** | 7:46 PM |
| **SUBJECT** | Your AdWords Account: Advertising Policy issue resolved |
| **FROM** | adwords-noreply@google.com |
| **TO** | techeyesinfo@gmail.com |

Hello,

Great news! We've re-reviewed your site and determined that the following site complies with our Advertising Policies:

Customer ID: 758-851-6663
Display URL: techeyes.com

If any of your ads for this site have been disapproved for violations of our Advertising Policies, you can just re-save your ads to automatically submit them for approval. Here's how to edit and resubmit ads for approval:
http://support.google.com/adwords/answer/116204?hl=en&utm_source=policy&utm_medium=email&utm_campaign=sen.

To review our Advertising Policies, please visit
http://support.google.com/adwordspolicy?hl=en&utm_source=policy&utm_medium=email&utm_campaign=sen.

This message was sent from a notification-only email address that doesn't accept incoming email. Please do not reply to this message. If you'd like to reach us, you can use this form (login required)
https://support.google.com/adwords/contact/site_policy?hl=en&utm_source=policy&utm_medium=email&utm_campaign=sen. Other contact methods are described at
http://support.google.com/adwords/answer/8206?hl=en&utm_source=policy&utm_medium=email&utm_campaign=sen.

Sincerely,
The Google AdWords Team

-----------------------------------------
Unsubscribe from policy-related emails for the account associated with techeyesinfo@gmail.com at
http://adwords.google.com/um/EmailOptOutLink?token=AOGacIorE8u5HN6Q0yJderrnKqd7t4k9ME8tGDhJRt9-4bYUUNynuiBUlNFhCFz5DpvymC093yvhSnW9NIkdJWo3QbWo3yVQsRyHrzMRjlTTGGlHiaKQm-E (this link expires in 30 days).

# GROUP EXHIBIT 3

| | |
|---:|:---|
| **DATE** | February 10, 2015 |
| **TIME** | 7:49 PM |
| **SUBJECT** | Your AdWords Account: Ads not running due to AdWords Advertising Policies |
| **FROM** | adwords-noreply@google.com |
| **TO** | techeyesinfo@gmail.com |

Customer ID: 758-851-6663

Hello,

We wanted to alert you that one of your sites violates our advertising policies. Therefore, we won't be able to run any of your ads that link to that site, and any new ads pointing to that site will also be disapproved.

Here's what you can do to fix your site and hopefully get your ad running again:

1. Make the necessary changes to your site that currently violates our policies:

Display URL: techeyes.com

Policy violation: Guns & parts Details & instructions:
https://support.google.com/adwordspolicy/answer/6014299?hl=en#322

2. Resubmit your site to us, following the instructions in the link above. If your site complies with our policies, we can approve it to start running again.

Repeated violations of our advertising policies could result in a suspension of your AdWords account, so it's important to address any issues as soon as possible by reviewing our policies. To learn more about AdWords suspension policies, please visit
http://support.google.com/adwordspolicy/answer/164786?hl=en&utm_source=policy&utm_medium=e mail&utm_campaign=spsu.

Sincerely,
The Google AdWords Team

1

| | |
|---:|:---|
| **DATE** | February 10, 2015 |
| **TIME** | 9:44 PM |
| **SUBJECT** | Your AdWords Account: Ad Disapproved |
| **FROM** | adwords-noreply@google.com |
| **TO** | techeyesinfo@gmail.com |

AdWords account number: 758-851-6663

Hello AdWords Advertiser,

we wanted to alert you that one or more of your ads or keywords have been disapproved. Unfortunately, we won't be able to show your ads on Google, our search partners, or on Display Network placements until you edit your ads or keywords to make them compliant with our policies.

If this is an error, we want to get your ads back up and running as quickly as possible, and your Google team is here to help. Below you'll find the reason why your ads or keywords have been disapproved. At the end of this email, you'll find a Problem Report that includes details about which ads or keywords have been disapproved and what you can do to fix them (if possible).

===================
Disapproval Reason
===================

Site Policy: We've determined that your site doesn't comply with our site policies. Because of this, any ads promoting this site have been disapproved.

For more information about suspended sites, please see:
http://adwords.google.com/support/aw/bin/answer.py?hl=en&answer=190447&utm_source=google& utm_medium=cm&utm_campaign=sitepolicy
-------------------

Repeated violations of our Advertising Policies may result in a suspension of your AdWords account, so it's important to address any issues as soon as possible by reviewing our policies. You can review our Advertising Policies at:
http://support.google.com/adwordspolicy?utm_source=google&utm_medium=cm&utm_campaign=awpv.

This message was sent from a notification-only email address that doesn't accept incoming email. If you have questions about our policies, please contact us through the AdWords Help Center at
http://support.google.com/adwords/bin/request.py?contact_type=approvals&utm_source=google&utm_medium=cm&utm_campaign=awpv.

Sincerely,
The Google AdWords Team

1

```
====================
```
Problem Report
```
====================
```

AdWords account number: 758-851-6663

------------------------------------------------

Campaign: 'FLIR,' Ad Group: 'FLIR LS Series'

------------------------------------------------

Ad Text:

FLIR LS32 & LS64 Thermals
Free Shipping, No Tax, Lowest Price
Best FLIR Thermal Monocular on Sale
flir.techeyes.com/lsscopes

Ad Status: Disapproved
Ad Issue(s): Site Policy
 ~~~~~~~~

SUGGESTIONS: You should have received a separate email that tells you the name of the policy that was violated, the site that's in violation, and a link that points you to more information about that policy and how to fix the issue.

If you have questions about why your site was suspended or would like to request a re-review of your site, please contact us at:
https://adwords.google.com/support/aw/bin/request.py?contact_type=site_policy

After your website has been re-enabled, you can then resubmit your ad for review by editing and saving your ad.

# GROUP EXHIBIT 4

| | |
|---:|:---|
| **DATE** | March 11, 2015 |
| **TIME** | 4:32 PM |
| **SUBJECT** | Google AdWords: Contact Info |
| **FROM** | ab@techeyes.com |
| **TO** | emily.thom@google.com |

Emily,

At what day and time she will reach me out?
I'm aware of this policy. That's why, I don't intend to advertise rifle scopes only observational optics.
Also I have a question why Cabelas.com, EuroOptic.com, NightVisionGuys.com, OpticsPlanet.com, SWFA.com and many other eStores who actually sells **GUNS, RIFLES, PISTOLS etc.** are still on Google, but our company, which doesn't sell **GUNS**, is suspended. I just don't understand it. I sent you an email with all of those companies. Did you guys take action agains them????
I want SOMEONE explain me that.

Thank you!

--
Artin Bogdanov

1

| **DATE** | March 18, 2015 |
|---:|:---|
| **TIME** | 6:35 PM |
| **SUBJECT** | Google AdWords: Contact Info |
| **FROM** | ab@techeyes.com |
| **TO** | emily.thom@google.com |

Emily,

Please give me examples policy violation on my landing pages.
Also when I type "scopes" in google I see OpticsPlanet ads with following landing page -
http://shop.opticsplanet.com/shgear.html?gclid=CLiE8Meis8QCFReTfgod5IYAew
Let me know if this landing page follow you policies.
Also when I type "riflescopes" on google I Cabela's ads with following landing page -
http://www.cabelas.com/browse.cmd?categoryId=567420480&WT.srch=1&WT.tsrc=PPC&rid=
20&WT.mc_id=GOOGLE%7COpt_General_Riflescopes-General+-
+riflescope%7CUSA&WT.z_mc_id1=43700004586285005&gclid=CK2F7o6js8QCFU1ffgod3
RIASA&gclsrc=aw.ds

Please tell me if this page meets all your policy's requirements.

Thank you!

--
Artin Bogdanov

1

| | |
|---:|:---|
| **DATE** | July 10, 2015 |
| **TIME** | 3:42 PM |
| **SUBJECT** | RE: [3-0284000007769] Phone Call Follow-up |
| **FROM** | ab@techeyes.com |
| **TO** | adwords-support@google.com |

Kevin,

I made all necessary changes.
I can't find anything what could possible be restricted by your policy.
Also Kevin I submited my request **AGAIN** regarding that Cabela's advertises on Google. This company sells **GUNS** and **RIFLES** and will never stop sell it. This is their core business. Could you find out if policy team received my complain?

In addition please transfer them my attachments for the keywords - rifle and riflescope (both keyword are restricted) -appear the biggest companies in our industry. Is it coincidence?

It's obvious you don't touch following companies:

Cabelas.com - sells guns, gun parts and rifle scopes (will never stop doing that)
OpticsPlanet.com - sells gun part, rifle scopes (will never stop doing that)
MidWayUsa.com - sells guns, gun parts and rifle scopes (will never stop doing that)
eBay.com
Amazon.com
Walmart.com

Please explain or advice.
Thank you!


--
Artin Bogdanov

| | |
|---:|:---|
| **DATE** | July 15, 2015 |
| **TIME** | 5:09 PM |
| **SUBJECT** | RE: [3-0284000007769] Phone Call Follow-up |
| **FROM** | ab@techeyes.com |
| **TO** | adwords-support@google.com |

Why you didn't reply for 5 days. I didn't know that there are restricted products,
Please reply it again. And let me know when you did it.

Kevin just to make sure Google's Policy restricts web sites that have Guns o Guns Parts for sale to advertise with Google, right?
And there's no exception for this Policy. and as long as web site has gun or gun part for sale that company can't use Google Adwords. Am I correct?

--
Artin Bogdanov

1

| | |
|---|---|
| **DATE** | July 27, 2015 |
| **TIME** | 1:29 PM |
| **SUBJECT** | RE: [3-0284000007769] Phone Call Follow-up |
| **FROM** | ab@techeyes.com |
| **TO** | adwords-support@google.com |

Kevin, your policy has grey areas that's why I asked you at the certain degree.

Does Google's Policy restricts to advertise with Google all web sites that have **Guns** or **Gun Parts** for sale?
And there's no exception for this Policy, so as long as web site has guns or gun parts for sale that company can't use Google Adwords. Am I correct?

Just answer "**Yes**" if it's true and "**NO**" if it's not.

--
Artin Bogdanov

1

# EXHIBIT 5

BALDWIN MADER LAW GROUP

SOUTHERN CALIFORNIA OFFICE
920 MANHATTAN BEACH BOULEVARD, No. 2
MANHATTAN BEACH, CALIFORNIA 90266

SILICON VALLEY OFFICE
530 OAK GROVE AVENUE, No. 206
MENLO PARK, CALIFORNIA 94025

(310) 545-0620
(310) 545-0624 FACSIMILE

*Via Regular Mail*

November 3, 2015

Google Inc.
AdWords Program
1600 Amphitheatre Parkway
Mountain View, CA 94043

Re:     *Tech Eyes, Inc. v. Google, Inc.*
        <u>Santa Clara County Superior Court Case No.: TBD</u>

Gentlemen:

We represent Tech Eyes, Inc. ("Tech Eyes") in connection with Google, Inc.'s improper termination of the Google Services Agreement ("Agreement") between the parties.

Tech Eyes is California Corporation, founded and established in February 2012, which operates a sports optics e-commerce website marketing and selling rifle scopes, binoculars, night vision binoculars and related. Tech Eyes conducts its business solely on-line.

On or about May 7, 2012, Tech Eyes entered into the Agreement with Google pursuant to which Tech Eyes advertised on Google's AdWords platform. Tech Eyes timely paid all amounts due Google under the Agreement. From the time the parties entered into the Agreement in 2012, Tech Eyes spent approximately $127,506.72 advertising on Google. Within approximately two and one-half years, Tech Eyes' annual gross revenues went from zero to over $2 Million.

On October 23, 2014, Google informed Tech Eyes that it had unilaterally suspended Tech Eyes from advertising on the Google platform on the basis that Tech Eyes sold "weapons" – knives and crossbows – on its website. (To be clear, Google suspended Tech Eyes not because of any "weapons" advertised by Tech Eyes on the Google platform, but merely because Tech Eyes sold knives and crossbows on its own website.)

In response, Tech Eyes immediately removed all knives and crossbows from its website. Google then demanded that Tech Eyes remove all rifle scopes from its website. Tech Eyes complied with Google's demand and removed all rifle scopes from its website, and after some time Google reinstated Tech Eyes' account.

However, after seeing that its major competitors (such as Cabela's, OpticsPlanet, Amazon and Walmart) advertise rifle scopes on the Google platform, Tech Eyes restored scopes onto its website in the summer of 2015. Scopes are ninety percent of Tech Eyes' sales and their sales crucial to Tech Eyes' survival. (Tech Eyes did not cause the scopes to be advertised on the Google platform, but merely restored the scopes onto its website.)

Google immediately again suspended Tech Eyes from advertising on the AdWords platform.

Google's suspension of Tech Eyes is baffling given that the very same products forming the basis of Google's suspension are, to this day, being sold by other firms on the Google platform. For example, Cabela's advertises on the Google platform the Viridian Universal Sub-Compact Laser Sight (touted as the "world's only subcompact weapon mountable green laser with a built-in light" that "is so tiny that it tucks neatly between trigger guard and muzzle"). OpticsPlanet advertises on the Google platform the Armasight Zeus-Pro Thermal Imaging Weapon Sight, which retails for over $6,000. OpticsPlanet also advertises on the Google platform the Ultradot Red Dot Gun Sight.

Moreover, Google's suspension is inexplicable given the AdWords policy on "Dangerous Products or Services," which bars advertising of "[a]ny part or component that's necessary to the function of a gun. *Examples*: Ammunition, ammunition clips, silencers, or ammunition belts." Rifle scopes are not included among the examples (and should not be, as they are not "necessary to the function of a gun.")

In all events, Tech Eyes entered into the Agreement and spent significant amounts at Google in good faith reliance that Google would not act in a manner so as to deny Tech Eyes the benefits of the Agreement. Google not only wrongfully barred Tech Eyes from advertising scopes on the Google platform (while at the same time allowing Tech Eyes' large competitors to advertise same), but also forced Tech Eyes to remove scopes from its own website, effectively destroying its business.

Google's demands were preposterous and in bad faith given that Cabela's, OpticsPlanet, Amazon and Walmart not only advertise rifle scopes and laser sights on the Google platform, but also sell rifles and handguns, among other weapons, on their respective websites. By wrongfully terminating the Agreement, Google acted in bad faith and damaged Tech Eyes. Google's wrongful termination of the Agreement also caused a significant and demonstrable drop in Tech Eyes' organic search exposure, substantially compounding the company's damages.

Tech Eyes hereby demands $2.8 Million in damages, the estimated amount of the company's lost profits caused by Google's bad faith termination of the Agreement. If Tech Eyes does not receive a response by November 17, 2015 which indicates a serious intention to work out a reasonable resolution, it will file a lawsuit in the appropriate forum.

2

We sincerely hope this is not necessary and this matter can be resolved amicably.  Respectfully, we note that Google uses the media to tout itself as an "anti-gun" company, with a goal of "doing no evil."  In reality, Google does the bidding of the some of the largest gun sellers in the nation, assisting them in gaining exposure to the on-line marketplace.   Not only do Cabela's, OpticsPlanet, Amazon and Walmart advertise rifle scopes and laser sights on the Google platform, but they also sell rifles and handguns on their respective websites.  Contrarily, Tech Eyes has never sold guns of any kind.  In all events, the media may take an interest in this dispute.

Please call the undersigned at (650) 868-3362 or Christopher P. Mader at (310) 545-0620.

Sincerely,

Patrick Baldwin

cc:      Google Inc.
         Legal Department
         1600 Amphitheatre Parkway
         Mountain View, CA 94043

# EXHIBIT 6

Google Inc.
1600 Amphitheatre Parkway
Mountain View, California 94043



Main 650.253.0000
Fax 650.253.0001
www.google.com

November 16, 2015

Dear Mr. Patrick Baldwin:

We have received your letter dated November 3, 2015 regarding your client, Tech Eyes.

As you are probably aware, the site techeyes.com was suspended on October 23, 2014 based on its violations of our policy on Dangerous Products, particularly for the sale of crossbows and gun and rifle optics.

The policy in place at the time that techeyes.com's account was suspended prohibited the sale of "Any part or component necessary to the function of a gun or intended for attachment to a gun" which included the sale of gun and rifle optics. That policy also prohibited the sale of crossbows: "Any other product designed to inflict harm on an opponent in sport, self-defense or combat [was prohibited]."

Please note that on September 29, 2015, however, we revised our Dangerous Products and Services policy, which now effectively allows the sale of crossbows and gun and rifle optics. This change was announced in our AdWords Policy Change Log on September 11, 2015. Since September 29, 2015, Google has been, upon advertiser request, re-enabling compliant sites that were previously suspended under the prior version of the policy.

To the best of my knowledge, this is the first notice we have received from techeyes.com since the relevant policy change. In accordance with our updated policy, and upon receiving your request, we have re-enabled the techeyes.com site, as it appears that it is no longer in violation of our policy. This site is now permitted to run in AdWords, and any previously disapproved ads for the techeyes.com domain should be submitted for approval so that they may run (so long as they comply with all other applicable AdWords policies).

We hope that this letter addresses your concerns.  If it does not, please do let us know.

Very truly yours,

Amir Steinhart
Product Counsel, Google